The following is the decree of the Court.

Curia, per

Dunkin, Ch.
Thomas G. Jaggers died in 1844. Certain slaves, which he held during his lifetime, and of which he died in possession, were bequeathed to the defendant. After the testator’s death, the complainant filed a bill, claiming these slaves under an instrument executed by Thomas G. Jaggers, on the 12th April, 1820. The claim was resisted by the defendant on tv/o grounds, viz: — first, that the instrument of 1820 was testamentary in its character ; and, secondly, that if intended as a deed, it had never been delivered. Chancellor Caldwell, who heard the cause in July, 1847, was dissatisfied with the evidence on the subject of the delivery. He says, “ neither the attestation of the witnesses, nor the affidavit of its execution, contain any evidence of its having been delivered; that word generally, indeed almost invariably, used in deeds, seems to have been studiously omitted,” He concluded, however, that the paper was testamentary, and, on that ground, dismissed the bill. On this point, his judgment was reversed by the Court of Errors, and the cause remanded, for the purpose of trying “ the question as to the due delivery of the deed.”
At the sittings for Chester, in July, 1848, the defendant applied for a continuance on cause shewn, which motion was refused. He then moved for an issue at law, which was also refused. The witnesses were then examined, (about ten in number.) The presiding Chancellor says, in his decree, that the only question was whether the deed was delivered. “ The testimony,” says he, “ does not materially differ from that which was offered before Chancellor Caldwell.” After reviewing the evidence, and weighing the degree of credit to be attached to the witnesses, the Chancellor considered the delivery of the deed established, and pronounced a decree sustaining the complainant’s claims. The principal grounds of appeal are, first, that the Chancellor should have granted the motion for a continuance, and, secondly, that there was error in refusing to order an issue at law to try the question of the delivery of the deed. On the first ground it is only necessary to remark, that motions for the continuance of a cause are addressed purely to the discretion of the presiding Chancellor, and it is difficult to conceive a case in which this Court could, with propriety, control or regulate the exercise of that discretion. It is impossible for an appellate tribunal to estimate all the circumstances so well as the magistrate who presided on the Circuit, He feels this responsibility, and the general tendency is to postpone a cause, rather than hazard what may seem an *36 irremediable injury. But this frequently works great injustice to the vigilant suitor who has used every diligence to ' obtain an adjudication of his rights, by a court which is held but once in a year.
1 McMul. Eq 255.
2 Daniel Ch. Pr. 1285.
Under the second ground, the defendant has insisted that he was entitled to a trial by jury under the constitution, .inasmuch as, until the decision of Young v. Burton, the Court of Equity had never assumed jurisdiction of causes for the specific delivery of slaves. But this is a misapprehension. In Young v. Burton the Court do not assume to exercise any new jurisdiction, but rather to apply the familiar principles of the Court to another class of cases. According to that decision, the Court of Equity had always the same authority which it then exercised. It was offered aS a practical objection to that decision that it would withdraw the determination of questions of fact from the appropriate tribunal, but it was never doubted that, if the Court had jurisdiction,'it might proceed with its ordinary machinery. But, without reference to any constitutional right, it was insisted that the question presented in this case was peculiarly proper for the consideration of the jury, and that the defendant’s application for an issue should have been granted.
There are cases in which an issue at law is matter of absolute right, as in the case of an heir at law, contesting the validity of a will, who is always entitled to an issue devisa-vit vel non, “ But there are many other cases,” says Mr. Daniel, “ in which issues will be directed; thus, if there is contradictory evidence between persons who are of equal credit, and have had equal opportunities of information, and the evidence is so equally balanced on both sides, that it becomes doubtful which scale preponderates, the Court will, in general, direct an issue, in order to relieve its own conscience, and to be satisfied by the verdict of a jury, of the truth or falsehood of the facts controverted, lest, taking upon itself to pronounce decidedly a matter of such uncertainty, it might do injustice to one of the parties, by determining against the truth of the fact.” The Chancellor who last heard this cause, reports that, discarding, as unworthy of credit, the defendant’s witness, Nancy Ward, “the issue of fact (to wit, the delivery of the deed) depends mainly upon the testimony of Roden and Rosborough.” “ There is no doubt whatever,” says he, “ of the veracity of these witnesses.” The Chancellor. has endeavored to reconcile the testimony of these witnesses ; and this Court will not undertake to say that he has been unsuccessful. But it is not too much to affirm that the same testimony produced a different impression on the preceding Chancellor. This Court desires to intimate no opinion whatever on the effect of the testimony, and, therefore, abstains from any further remarks on the evidence, lest any intimation might be erroneously inferred.
3 Ves.& Bes. 41.
Misreported in State Equity Rep. p.62
Undoubtedly, granting an issue, except in cases where practice has made it a matter of right, is a discretionary act; but a mistake in the exercise of that discretion is a just ground of appeal. “ I agree,” says Lord Eldon, in Damp-son v. Uampson, “ that a mistake in refusing to send the cause to a jury is a just ground of appeal, if the Court of Appeal should think that the contrary decision would have been a sounder exercise of discretion.” In Drayton v. Logan* the Court of Appeals recognized the decision in Damp-. son v. Hampson as the law of the Court, and reversed order of Chancellor Gaillard, who had granted an order for an issue at law, under circumstances in which the Appeal Court thought it would have been a sounder exercise of discretion to have refused an issue. So we are of opinion that *38 this was a proper case for a jury, and that the motion of the <3efendant for an issue at law should have been granted.
3 Ves. & Beames.
jt js ordered and decreed that the decree of the Circuit Qourt P)e reversed, and that an issue at law be made up to try the question of the due delivery of the deed set forth in the pleadings.
Caldwell, Ch. concurred.

 The following is the opinion of the Appeal Court in the case of Drayton v. Logan, delivered at its Sitting in March, 1824.
The bill in this case was brought for two objects: 1st. To set up and foreclose a mortgage from Dr. Isaac Chandler, deceased, (of whom defendants are legatees,) to Charles, Thomas and Glen Dray-ton. Or 2nd, If not succeeding in that object, to disaffirm the title of Doctor Chandler, and set up the title of complainants. At the hearing below the Chancellor directed an issue to the Court of Common Pleas, to ascertain whether there be anything due on the bonds of Dr. Chandler; and the present motion is to rescind that order.
Much of the merits of the case have been gone into in the argument in this Court, but I shall not follow the counsel, as I deem it unnecessary where the question relates only to an order which embraces the merits no further than as it might affect them before a jury, and their verdict would come before the Court for a revision. The points, then, which have been pressed upon the Court, of adverse possession, length of time, and the effect of new discovered testimony, are all for the consideration of the Circuit Court, with whose province it would be wrong to interfere. Let us examine what would be the effect of this issue. We are told, and it is not denied, that issues are placed at the foot of the docket in the Court of Common Pleas, where they must await their turn for trial two, three or four years; then they are returned here and take their place upon our docket, where they must wait their call one or two years longer. Under these circumstances I know of no calamity which can befal a suitor, more grievous than to have his cause sent down to a Court of Law. A delay of justice is an evil often as serious as a denial of justice. But further, to ascertain what is due upon the bonds of Doctor Chandler, the jury must go into the examination of various payments and make a long calculation before they can find a verdict, but for all this the Commissioner is far more competent. He can take more time than a jury. He can summon the parties before him and take up the evidence from day to day until he ascertains the amount due accurately. It need hardly be remarked at the present day that this Court, aided by the Commissioner, entertains a peculiar *38 jurisdiction over long and intricate matters of account; where a jury would he involved in doubt and difficulty.
It has been objected that the question would depend upon the opinion of the Commissioner, which ought to direct the Court. But I apprehend not. He will state only matters of fact, and upon exceptions the Court will decide the legal point; and this is done every day. It is further objected that this is an interlocutory order, from which there cannot be an appeal. But it is laid down by Lord Chancellor Eldon, in the case of Hampson v. Sampson, that “ a mistake in refusing to send a cause to a jury is a just ground of appeal, if the Court of Appeal should think that a contrary decision ■ would have been a sounder exercise of discretion, but it is a competent exercise of the authority and duty of the Court in every case, and throughout every case, and in every stage, to determine according to its discretion whether it does or does not want that assistance.” Then the rule laid down by his lordship must work both ways, and if an appeal will lie for refusing an issue, it will also lie for directing one, where it will operate as a hardship upon the complainant. It depends, to be sure, upon the discretion of the Court, but that ought to be a sound discretion, and not productive of an injury to the party. Besides, the Act of Assembly giving power to the Judges to hear witnesses in open Court, has in a great measure constituted them jurors, and where there is a doubt of the credibility of a witness, the counsel can easily, and do constantly, bring the matter before the Court. So that it appears a refusal to direct an issue would have been a sounder act of discretion.

For these reasons the order of the Circuit Court directing an issue must be rescinded; and the cause reinstated at its place upon the doclcet.

We concur in the decretal order.
War. L>. James,
Henry W. Desaussure,
Thobias Waties.*
*The Reporter supposes that this opinion rvas delivered by Chancellor James, and was not concurred in by Chancellor Gaillard. The Court of Appeals in Equity, then, as now, consisted of four Chancellors.